UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST COURT
MIDDLE DIST. OF LA

| | |
|---|---|
| **TONY HARRIS** | CIVIL ACTION NO.: 03-640 |
| **VERSUS** | SECTION "A" |
| **CITY OF BATON ROUGE, ET AL** | MAGISTRATE: 3 |

## MEMORANDUM IN SUPPORT OF MOTION IN LIMINE
## TO EXCLUDE OR LIMIT THE TESTIMONY OF DEFENDANTS'
## EXPERT KERRY J. NAJOLIA
## AND FOR EXPEDITED CONSIDERATION

**MAY IT PLEASE THE COURT:**

This Motion in Limine is directed at the Defendants' use of their proposed use as an expert, Kerry J. Najolia or his testimony as it relates to the use of reasonable force and Baton Rouge Police Department policy, procedures, and survival tactics relating to the use of a canine. Under the standards set forth by the Supreme court in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), Najolia's opinions and underlying methodologies are unreliable, unfounded, speculative, and not based on sufficient facts or expertise.

### STATEMENT OF FACTS

On June 9, 2003, Mr. Harris was one of two individuals burglarizing the C & M Music Store on Florida Boulevard around 10:00 p.m. when Officer Polito and K-9 Rebel were noted at the crime scene. Harris and his accomplice ran different ways



from the building to avoid apprehension. Officer Polito gave K-9 Rebel a command to bite and hold Harris who was disappearing around the front of the building. After a small foot chase, Harris saw K-9 Rebel and Officer Polito coming after him and he testified he immediately hit the ground and was in a prone position with his feet and arms outspread to surrender when K-9 Rebel grabbed his right arm. Harris has also testified that after Officer Polito was at the scene, he talked on his radio while Rebel was holding his right arm and that when he raised his head to beg the Officer to get the dog off his arm, Officer Polito slapped him in the back of the head with his hand and told him to keep his head down. At that time, K-9 Rebel began to savagely bite into his arm. It is undisputed that K-9 Rebel savagely chewed on Harris' arm, as shown by a photograph taken by the police department when Harris was at the hospital getting his arm sutured. All police witnesses have testified the damage done to Harris' arm was the worst they have ever seen.

In September of 2004, defendant's proposed expert Kerry J. Najolia was retained to render an opinion as to the reasonableness of the use of force and a canine by Officer Polito in his apprehension of Mr. Harris based on guidelines and procedures set forth by the United States Police Canine Association(USPCA). The USPCA is a predominant national certifying organization for the use of canines by Police Officers. More importantly however, the USPCA is also the organization which certified the Baton Rouge Police Department and promulgated the guidelines used by the Baton Rouge Police Department for canine use.

Despite the fact that Najolia is not a certified member of the USPCA, he opines as to the meaning and propriety of USPCA guidelines, certification, and procedures as well as Officer Polito's alleged compliance with the same.

Najolia's prior experience in canine handling is in a separate field of canine handling for tactical SWAT purposes. Najolia admits to having very little experience in handling service canines such as the canine used by Officer Polito in the instant case. (See Exhibit 2, p. 25) Ultimately, Najolia's opinions in the areas in which the defendants propose to tender him as an expert is based on a separate and distinct field of experience. Additionally, Najolia has only actively participated in one actual canine bite apprehension situation which is the type of apprehension situation at issue in the present case. (See Exhibit 2, p. 91)

In forming his opinion, Najolia visited the scene of the apprehension in September of 2004 which was over a year after the incident. (See Exhibit 2, p. 6) Najolia bases his opinion as to the training, ability, and compliance of Officer Polito and K-9 Rebel with USPCA regulations on one forty-five minute visit at a training facility a year after the incident. (See Exhibit 2, p. 80)

Najolia's opinion presumes K-9 Rebel always complied with orders despite the fact that K-9 Rebel's performance reviews revealed instances of non-compliance. (See Exhibit 2, p. 90) In order to form his opinion, Najolia disregarded the plaintiff's account of the facts including discounting the time and manner in which Mr. Harris reports being in K-9 Rebel's bite hold prior to Officer Polito's arrival and the amount of time Officer Polito allowed K-9 Rebel to maintain a bite

hold after he arrived. (See Exhibit 2, pp. 96-107)

Najolia also disregards plaintiff's account that Officer Polito spoke on the radio for several minutes before calling off K-9 Rebel and that after noncompliance with the order to out, Officer Polito had to hit K-9 Rebel get him to release the plaintiff's arm. (See Exhibit 2, pp.100-101).

Najolia's opinions as to the cause of the severity of the plaintiff's injuries are speculative and not based on fact in as much Officer Polito was not present to observe the manner in which the plaintiff was apprehended by K-9 Rebel and Najolia disregards the plaintiff's account of the apprehension by K-9 Rebel. (See Exhibit 2, pp. 94-106)

## LAW

Federal Rule of Evidence 702 allows a qualified witness to give opinion testimony "[i]f scientific, technical, or other specialized knowledge" will help the trier of fact understand the evidence or determine a fact in issue. The rule requires that expert testimony be both relevant and reliable. Daubert, 509 U. S. 589. To be reliable, "[p]roposed testimony must be supported by appropriate validation--i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. 590. The rule gives a screening role to the trial judge, who must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. 597.

In Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999) the court affirmed that a trial judge's general 'gatekeeping' obligation--applies not only to

testimony based on 'scientific' knowledge, but also to testimony based on 'technical' or 'other specialized' knowledge. (Id.) The party offering the expert has the burden of proving admissibility under Rule 702. See Daubert, 509 U.S. at 592 n. 10 (citing Fed. R.Evid. 104(a)).

An expert's opinion must be based upon scientific, technical or other specialized knowledge and not upon "subjective belief or unsupported speculation." Daubert, 509 U.S. at 590. Moreover, "testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the jury." See McGowan v. Cooper Industries. Inc., 863 F.2d 1266, 1273 (6 Cir. 1987). Under Daubert and Rule 702, the court must examine an expert's methodology and conclusions in order to insure reliability. "Conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." General Electric Co. v. Joyner, 522 U.S. 136, 146 (1997).

The Court in Daubert identified several factors to assist courts in evaluating whether a theory or methodology constitutes reliable knowledge. These include:

    1.    Whether the theory or technique can be or has been tested;

    2.    Whether the theory has been subjected to peer review and publication;

3. Whether a technique has a known or potential rate of error and whether there are standards controlling the technique's operation; and

4. Whether the theory or method has general acceptance in the scientific community.

However the Court in Kumho Tire noted that the Daubert list was not exclusive and urged trial courts to employ them only when they would be helpful: "the law grants a district court ... broad latitude when it decides how to determine reliability ...." Kumho Tire, 526 U.S. 141 to 142 (citing General Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997)).

"The focus of the inquiry must be on the expert's principles and methods rather than his or her conclusions." See Daubert, 509 U.S. 595. "But since principles, methods, and conclusions intertwine, the trial court may consider an expert's conclusions when assessing whether the expert properly applied the principles and methods to the facts of the case." See General Elec. Co. v. Joiner, 522 U. S. 136, 146 (1997) . "[A]ny step that renders the analysis unreliable ... renders the expert's testimony inadmissible." In re Paoli R.R. Yard PCB Litig., 35 F. 3d 717, 745 (3d Cir. 1994).

## ARGUMENT

In this case, the admission of Najolia as an expert or his testimony relating to the use of reasonable force and USPCA/Baton Rouge Police Department policy, procedures, and survival tactics relating to the use of a canine is objectionable on several grounds. The first is that the defendants have the burden of proof under the Daubert analysis to establish that their expert witness qualifies as an expert in the

particular field in which he is nominated to testify. In this case, the defendants propose to utilize a NNDDA certified SWAT officer as an expert on the issues of USPCA compliance and the reasonableness of force employed by a USPCA certified patrol officer and USPCA certified regular service K-9. As this proposed testimony lies outside the area of expertise claimed by Najolia, his status as an expert is called into doubt.

Najolia should not be qualified to interpret compliance with USPCA guidelines and procedures in as much as he is not a member of the USPCA, is not experienced in USPCA training and certification of officers and canines and has no field experience with USPCA canine use procedure and guidelines as adopted by the Baton Rouge Police Department. Furthermore, Najolia's years of experience in the separate field of canine handling for tactical SWAT purposes should not qualify him to testify in the field of handling service canines in which he admits to having very little experience. Najolia also admits to having only actively participated in one actual canine bite apprehension situation which is the type of apprehension question as issue in the present case. Ultimately, Najolia's knowledge regarding the various topics on which he is being proffered to testify in the present case is based on separate and distinct fields of experience and certification such that he should be excluded under the Daubert standard.

The second basis for the exclusion of Najolia or the majority of his testimony is the fact that the methodology upon which his work is founded is fatally flawed and based on incomplete information and subjective determinations. In forming his

opinion, Najolia visited the scene of the apprehension only one time in September of 2004, which was over a year after the incident. Najolia made only one forty-five minute visit at a training facility a year after the incident to form his subjective opinion as to the training, ability, and compliance of Officer Polito and K-9 Rebel with USPCA regulations. Najolia's opinion also disregarded facts about K-9 Rebel's prior instances of non compliance with orders. In making his opinions Najolia further disregarded almost all of the plaintiff's account of the facts which Najolia admits if true would change his opinion as to the reasonableness of Officer Polito's actions and the manner in which Mr. Harris sustained such severe injuries. (See Exhibit 2, pp. 94-106)

In Hutchison v. Cutliffe 344 F.Supp.2d 219 D.Me., 2004 involving a §1983 action, the court excluded the proposed expert testimony of a former deputy chief of police of the Los Angeles Police Department about the ultimate reasonableness of the degree of force that the defendant police officer applied to arrestee, since "it was within the ability of jurors as lay persons to decide whether the use of force was reasonable once they decided which set of facts to believe." The court found that the proffered testimony of the former deputy chief about the "reasonableness" of the defendant officer's actions "merely regurgitated" one side's version of the events and the expert's own personal conclusion about the reasonableness of officer's actions. Hutchison v. Cutliffe 344 F.Supp.2d 219 D.Me.,2004. Because Najolia's opinion is based upon limited examination and mostly subjective belief and unsupported speculation, it should not qualify as an expert opinion. Daubert,

509 U.S. at 590. Furthermore, Najolia's opinions, disregarding the testimony of the plaintiff, are personal beliefs as to the weight of the evidence which invades the province of the jury. McGowan v. Cooper Industries. Inc., 863 F. Supp. 1266, 1273 (6 Cir. 1987). Ultimately, Najolia's opinions are biased and unreliable and should thus be excluded under the Daubert standard.

## CONCLUSION

For all of the foregoing reasons, Tony Harris prays that the Court exclude or limit from use at trial, the defendants proposed expert Kerry J. Najolia or his testimony as it relates the use of reasonable force and Baton Rouge Police Department policy, procedures, and survival tactics relating to the use of a canine.

RESPECTFULLY SUBMITTED:

MAUGHAN, MAUGHAN & LORMAND, LLC

_____
ROY H. MAUGHAN, JR., #17672
634 CONNELL'S PARK LANE
BATON ROUGE, LOUISIANA 70806
TELEPHONE: (225) 926-8533
FAX: (225) 926-8556

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have on this 23rd day of March, 2005, served a copy of the foregoing Motion in Limine on James L. Hilburn, Special Assistant Parish Attorney, 10500 Coursey Boulevard, Suite 205, Baton Rouge, Louisiana, 70816 by tele-faxing, hand delivering and/or mailing the same via United States mail, properly addressed, and first class postage prepaid.

_____
ROY H. MAUGHAN, JR.

Page -9-